948 A.2d 735 (2008)
400 N.J. Super. 608
STATE of New Jersey, Plaintiff-Respondent,
v.
Maribel ROLON a/k/a Rodriguez, Defendant-Appellant.
Docket No. A-1049-06T4
Superior Court of New Jersey, Appellate Division.
Submitted January 28, 2008.
Decided June 20, 2008.
Yvonne Smith Segars, Public Defender, attorney for appellant (Donald M. Spector, *736 Designated Counsel, of counsel and on the brief).
Theodore J. Romankow, Union County Prosecutor, attorney for respondent (Jason Gareis, Assistant Prosecutor, of counsel and on the brief).
Before Judges LINTNER, GRAVES and SABATINO.
The opinion of the court was delivered by
GRAVES, J.A.D.
On June 1, 2006, following a jury trial, defendant Maribel Rolon was convicted of first-degree robbery by knowingly using force upon another while armed with a deadly weapon or threatening the immediate use of a deadly weapon, N.J.S.A. 2C:15-1(a)(1) (count one), and fourth-degree possession of a knife under circumstances not manifestly appropriate for lawful use, N.J.S.A. 2C:39-5(d) (count six). Defendant was acquitted of counts two through five of Indictment No. 06-01-00003: first-degree robbery by threatening another with bodily injury or purposely putting another in fear of immediate bodily injury while armed with or threatening the immediate use of a deadly weapon, N.J.S.A. 2C:15-1(a)(2) (count two); second-degree aggravated assault by attempting to cause serious bodily injury, N.J.S.A. 2C:12-1(b)(1) (count three); third-degree aggravated assault by attempting to cause bodily injury with a knife, N.J.S.A. 2C:12-1(b)(2) (count four); and third-degree possession of a knife with intent to use it unlawfully, N.J.S.A. 2C:39-4(d) (count five). While the jury was deliberating, defendant pled guilty to the single count of Indictment No. 06-01-00002, fourth-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7(a).
At sentencing, count six was merged into count one and defendant was sentenced to a twelve-year state prison term on the first-degree robbery conviction, subject to an eighty-five percent parole ineligibility period under the No Early Release Act, N.J.S.A. 2C:43-7.2. She was also sentenced to a concurrent eighteen-month prison term for fourth-degree possession of a weapon by a convicted person.
On appeal, defendant presents the following arguments:
POINT I
THE TRIAL COURT ERRED IN CHARGING THE JURY THAT DEFENDANT'S INTENT WITH RESPECT TO THE USE OF A WEAPON IS IRRELEVANT FOR DETERMINING WHETHER DEFENDANT IS ARMED WITH A DEADLY WEAPON FOR PURPOSES OF FIRST[-]DEGREE ROBBERY; THEREFORE, DEFENDANT WAS DEPRIVED OF DUE PROCESS OF LAW AND THE RIGHT TO A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT II
THE TRIAL COURT'S FAILURE TO EXPLAIN FIRST[-]DEGREE ROBBERY WITH REFERENCE TO THE CONFLICTING FACTS OF THE CASE AND INCLUSION OF ELEMENTS THAT SHOULD NOT HAVE BEEN CHARGED, DEPRIVED DEFENDANT OF DUE PROCESS OF LAW AND THE RIGHT TO A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT III
THE INCONSISTENT VERDICTS ON THE TWO COUNTS OF FIRST[-]DEGREE ROBBERY AND POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE CLEARLY DEMONSTRATE THAT THE *737 JURY WAS MISLED BY THE JUDGE'S ERRORS IN THE INSTRUCTIONS ON FIRST[-]DEGREE ROBBERY; AS A RESULT, DEFENDANT WAS DEPRIVED OF DUE PROCESS OF LAW AND THE RIGHT TO A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT IV
THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE DEFENDANT THE RIGHT TO A FAIR TRIAL WHEN THE COURT RULED THAT DEFENDANT'S TWO REMOTE PRIOR CONVICTIONS WOULD BE ADMISSIBLE IF SHE TESTIFIED. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10; N.J.R.E. 609.
POINT V
GIVEN THE CIRCUMSTANCES OF THE OFFENSE AND THE REMOTENESS OF MS. ROLON'S NEW JERSEY STATE CONVICTIONS, THE TWELVE[-]YEAR SENTENCE, SUBJECT TO THE NO EARLY RELEASE ACT, WAS EXCESSIVE AND VIOLATES THE PROVISIONS OF THE NEW JERSEY CODE OF CRIMINAL JUSTICE.
After reviewing the record in light of these contentions, we conclude the court's response to a request from the jury for a definition of "armed" was fatally defective. Accordingly, defendant's robbery conviction must be reversed and remanded for a new trial.
Shortly before 9:00 a.m. on Monday, September 12, 2005, defendant entered Kalamio restaurant located at 847 Second Avenue in the City of Elizabeth. Defendant testified she went into the restaurant to get something to eat. The restaurant was empty, however, and no one was present to serve her. According to defendant: "I went . . . around the counter area and I said hello but no one came out and there was an open cabinet door. . . . And I saw a purse, I went in the purse. . . . [to see] if there was money." As defendant was removing money from the purse, Anna Padilla, owner of the restaurant, emerged from the kitchen. According to Padilla, when defendant saw her, defendant "tried to escape," but Padilla "grab[bed] her to take the money [a]way from her."
Padilla testified that during the ensuing struggle, which lasted for "five [or] ten minutes," defendant pulled her necklace off. According to Padilla, she grabbed defendant by her wrists because defendant had Padilla's necklace "in one hand and the money in the other hand." Padilla testified that after letting go of the necklace and money, defendant "took out her knife." Padilla said she was "scared" because defendant "wanted to hurt me like this with the knife."[1] At trial, Padilla identified a folding knife recovered from the restaurant floor as the knife defendant was holding during the struggle.
Defendant's version of the struggle with Padilla was entirely different. According to defendant, after she took the money from Padilla's purse, Padilla grabbed her and would not let go. Defendant denied taking Padilla's necklace, and she denied punching or hitting her. Defendant testified she was trying to leave, and she kept telling Padilla "to let me go, to let me go, and I was just waving my hands." Defendant admitted she had a knife in the front pocket of her jeans, which fell out during the struggle, but she said the blade *738 was not open before the knife hit the floor. Defendant also testified she never held the knife in her hand, never threatened Padilla with the knife, and never intended to use the knife against Padilla.
Maria Ramirez, a restaurant employee who had been working in the kitchen, observed part of the struggle and telephoned the police. Ramirez testified she "saw both of them fighting," and she saw defendant holding "Anna's chain," but she never witnessed defendant with a knife in her hand.
When Detective Clarence Cunningham of the Elizabeth Police Department arrived on the scene, he apprehended defendant as she was "running out of the store, a restaurant type of a store." According to Cunningham, "[t]he restaurant was in disarray . . . the tables were flipped over, there was money on the floor, the owner's pocketbook was thrown on the floor, tables and chairs were thrown on the floor." Cunningham recovered a "folding knife" from the restaurant floor and, when asked if "the blade was open or shut," he testified the blade was open.
Following the testimony of Padilla, Ramirez, Detective Cunningham, and defendant, the court charged the jury, in pertinent part, as follows:
Now a section of our statute provides that robbery is a crime of the second degree, except that it becomes a crime and is a crime of the first degree if the robber is armed with or uses or threatens immediate use of a deadly weapon.
Now the words armed with [are] distinguishable from mere possession. Armed with means possessing an implement in a way that makes it available for use as a weapon.
So in this case, the defendant  it's alleged the defendant was armed with [a] knife, a deadly weapon in the course  while in the course of committing the robbery. In order for you to determine the answer to the question, in this question, you must understand the meaning of the term deadly weapon.
A deadly weapon is any firearm or other weapon, device, instrument, material or substance which in the manner it is used . . . or is intended to be used, is known to be capable of producing serious bodily injury or which in the manner it is fashioned would lead the victim to reasonably believe it could be capable of producing death or serious bodily injury.
In this case the State alleges that the defendant was armed with a knife and that is an item that was produced into evidence. You must determine if this object qualifies as a deadly weapon and if the State has proven beyond a reasonable doubt that the defendant was in the course of committing a robbery.
After the jury began deliberating, it sent the court the following note: "Definition of armed?" Prior to responding to the jury's inquiry, the court advised counsel:
I intend to read to the jury the information as contained in the case of [State v. Clark, 352 N.J. Super. 130, 799 A.2d 679 (App.Div.), certif. denied, 174 N.J. 545, 810 A.2d 65 (2002)]. The term is not defined by the code but it's distinguishable from mere possession.
"Armed means possessing an implement in a way that makes it available for use as a weapon. The defendant's intent with respect to the object is irrelevant."
That's the [Clark case], it was decided in 2002, and it seems to be the most recent statement of armed, so that's what I'll tell the jury.
Defendant's attorney objected to the proposed charge, arguing mere possession of the knife would not warrant a conviction for first-degree robbery without "some *739 sort of use of that weapon or display [of] that weapon." Nevertheless, relying on Clark, the court charged the jury as follows:
I have some good news and bad news-the code does not define the word armed. However, the cases distinguish armed from mere possession. It's different than mere possession and the case law seems to indicate that being armed means possessing an implement in a way that makes it available for use as a weapon. The defendant's intent with respect to the object is irrelevant. So it's something more than possession, it means possessing an implement in a way that makes it available for use as a weapon. I hope that helps you.
[(Emphasis added).]
This language, which is notably absent from our decision in Clark, may have been taken from Cannel, New Jersey Criminal Code Annotated, comment 6 on N.J.S.A. 2C:15-1 (2005) (emphasis added), which states: "[Clark] appears to find that being armed means possessing an implement in a way that makes it available for use as a weapon; the defendant's intent with respect to the object is irrelevant."
The issue in Clark, however, was whether defendant, who admitted to unlawfully entering premises with a folding knife attached to the belt loop of his pants, could be convicted of second-degree "armed" burglary, N.J.S.A. 2C:18-2(b)(2), rather than third-degree "unarmed" burglary, N.J.S.A. 2C:18-2. Clark, supra, 352 N.J.Super. at 137-38, 799 A.2d 679. Under the burglary statute, N.J.S.A. 2C:18-2, if a defendant "[i]s armed with or displays what appear to be explosives or a deadly weapon," he may be convicted of second-degree armed burglary. N.J.S.A. 2C:18-2(b)(2) (emphasis added). Because "the statute manifestly establishes as an element the mere possession of such an implement," we held it was "of no consequence . . . that the article in question might also have innocent uses." Clark, supra, 352 N.J.Super. at 138-39, 799 A.2d 679. Thus, defendant's possession and display of the folding knife on his belt loop was sufficient to elevate the crime to a second-degree offense, regardless of his intent with respect to the knife. Id. at 139, 799 A.2d 679.
The Clark court relied on State v. Merritt, 247 N.J.Super. 425, 428, 589 A.2d 648 (App.Div.), certif. denied, 126 N.J. 336, 598 A.2d 893 (1991), a case in which the defendant was convicted of second-degree armed burglary after entering a residence and stealing, among other things, seven firearms. The defendant argued the firearms were "proceeds of the theft and that he was not `armed' because he did not use or intend to use firearms in connection with the offense." Id. at 429, 589 A.2d 648. The Merritt court disagreed and upheld defendant's burglary conviction, stating that an individual "may be found to have been armed, without showing that he actually used or intended to use the weapon, so long as he had immediate access to the weapon during the offense." Id. at 430, 589 A.2d 648.
In contrast to Clark and Merritt, which involved the armed burglary statute, N.J.S.A. 2C:18-2, the present appeal involves defendant's conviction for first-degree armed robbery. The circumstances here are therefore more closely akin to our decisions in the two robbery cases of State v. Riley, 306 N.J.Super. 141, 703 A.2d 347 (App.Div.1997), and State v. Brown, 325 N.J.Super. 447, 739 A.2d 975 (App.Div. 1999), certif. denied, 163 N.J. 76, 747 A.2d 285 (2000). In Riley, supra, 306 N.J.Super. at 145-46, 703 A.2d 347, we affirmed defendant's conviction for second-degree robbery, but we found the evidence was insufficient to convict defendant of first-degree *740 robbery because "[t]here was no evidence that defendant used or intended to use his pocket knife during the course of the robbery. Nor did the victim himself have knowledge of defendant's possession of the knife." Under those circumstances, we concluded defendant was not armed with a deadly weapon "simply by reason of the pocket knife having been on his person during the course of the robbery." Id. at 146, 703 A.2d 347. In distinguishing Merritt, the Riley court stated as follows:
We reasoned [in Merritt] that mere possession of those firearms met the statutory element of N.J.S.A. 2C:18-2b(2) of being armed with a deadly weapon because they were accessible for use by defendant while committing the crime [of burglary] whether or not he actually used or intended to use them. We fully concur in that reasoning but nevertheless think it clear that this case is different. Firearms are per se deadly weapons. Here, the implement with which defendant may be regarded to have been armed can be deemed to have been a deadly weapon  the other half of the "armed with a deadly weapon" formulation  only if the implement was, in fact, a deadly weapon. And this implement  the pocket knife  can only be found to have been a deadly weapon if it was used or intended to be used as such.
[Riley, supra, 306 N.J.Super. at 149-50, 703 A.2d 347.]
In a case such as this, where the knife was not a per se deadly weapon, the Riley court recognized that "armed with a deadly weapon" is comprised of two components, and the "defendant's actual or presumed state of mind in possessing the implement is critical to the determination of whether the implement is a weapon at all." Id. at 150, 703 A.2d 347. Thus, in the present matter, defendant's intent regarding the knife was not irrelevant. See State v. Blaine, 221 N.J.Super. 66, 70, 533 A.2d 980 (App.Div.1987) (holding that "a folding knife with a four-inch blade" was "susceptible to both lawful and unlawful uses, [therefore] its status as a weapon whose possession is capable of subjecting its possessor to criminal liability is entirely dependent on the circumstances attending the possession"); see also State v. Lee, 96 N.J. 156, 162, 475 A.2d 31 (1984) (explaining that "surrounding circumstances" determine whether the purpose of an actor was to use an otherwise innocent object "as a weapon") (internal quotation omitted).
We relied upon the holding in Riley in the factually similar case of State v. Brown. In Brown, supra, 325 N.J.Super. at 450, 739 A.2d 975, defendant struck an elderly woman in her back as she was walking home from a Pathmark supermarket, and he took her shopping bag and purse after she fell to the ground. When defendant was apprehended a short time later, he had "an ordinary kitchen knife with a five-inch long blade" in his right front pocket. Ibid. Although he was subsequently found not guilty of first-degree robbery, defendant argued his motion for acquittal of the first-degree charge should have been granted and we agreed:
As in Riley, the knife was neither held by defendant nor seen by the victim. The only evidence was that [the knife] was immediately available to defendant during the robbery. While that establishes that defendant was armed, [Merritt, supra, 247 N.J.Super. at 429-30, 589 A.2d 648], it is not sufficient evidence that the weapon was a "deadly weapon" as defined by N.J.S.A. 2C:11-1c.
[Brown, supra, 325 N.J.Super. at 454, 739 A.2d 975.]
Of course, "robbery, as an aggravated form of theft is a specific intent *741 crime. . . . In other words, without the intention to steal evidenced by a theft or attempted theft, there can be no robbery." State v. Lopez, 187 N.J. 91, 98, 900 A.2d 779 (2006) (internal citations omitted). Moreover, both Riley and Brown stand for the proposition that in a robbery case, where the potential weapon is not per se a deadly weapon, like a firearm, a defendant cannot be considered to have been "armed with a deadly weapon" unless he had immediate access to the potential weapon as well as an intent to use it in a way that is "capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." N.J.S.A. 2C:11-1(c) (defining deadly weapon).
"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. Afanador, 151 N.J. 41, 54, 697 A.2d 529 (1997). In this case, the jury was told: "Armed means possessing an implement [the knife] in a way that makes it available for use as a weapon. The defendant's intent with respect to the object is irrelevant." This instruction was inadequate because it was incorrect. It was incorrect because the jury was told it could convict defendant of first-degree robbery even if it believed defendant never actually used, threatened to use, or intended to use the knife. Consequently, defendant's first-degree robbery conviction must be reversed. See Lopez, supra, 187 N.J. at 101, 900 A.2d 779 (stating that "erroneous instructions on material issues are presumed to be reversible error") (internal quotation omitted).
We therefore reverse defendant's first-degree robbery conviction and remand that charge for a new trial. In light of our disposition, it is unnecessary to address defendant's remaining contentions.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] The record does not reveal the gestures Padilla apparently made simultaneously with this testimony.